IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ANDRE R. LEVESQUE,

                Plaintiff,

                                    Civil Action No.
     v.                           9:10-CV-0787 (DNH/DEP)

CLINTON COUNTY, *et al.*,

                Defendants.

_____

APPEARANCES:                      OF COUNSEL:

FOR PLAINTIFF:

ANDRE R. LEVESQUE, *Pro Se*
Clinton County Jail
25 McCarthy Drive
Plattsburgh, New York 12901

FOR DEFENDANTS:

LEMIRE JOHNSON LLC         GREGG T. JOHNSON, ESQ.
P.O. Box 2485                    APRIL J. LAWS, ESQ.
2534 Route 9
Malta, New York 12020


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

This case was commenced by *pro se* plaintiff Andre Levesque against defendants Clinton County and various, unidentified "John Does" generally alleging that his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, were violated during his incarceration at the Clinton County Correctional Facility. Dkt. No. 1. Since the commencement of this action on July 1, 2010, defendants' motion for judgment on the pleadings has been granted in part, and the only remaining cause of action in this case is plaintiff's Title II ADA claim. Dkt. No. 89.

After a series of frivolous or harassing submissions by plaintiff, and a succession of warnings issued by the court in response, on April 16, 2013, I ordered plaintiff to show cause why I should not recommend to District Judge David N. Hurd that this case should be dismissed. Dkt. No. 124. On April 29, 2013, plaintiff filed his response to that order. Dkt. No. 128. For the reasons set forth below, I recommend that plaintiff's complaint be dismissed.

I.  BACKGROUND

Over the course of this case, plaintiff has submitted eighty-two filings that run the gamut from requesting status updates of his action to sending pieces of skin to be filed with the court.[1]  In addition, at least eight of these filings appear to request no relief and serve no useful purpose at all.[2]  Countless of plaintiff's filings have contained harassing and/or threatening language that has given the court pause.[3]  Plaintiff has also sent threatening letters directly to defendants'

---

[1]  Dkt. Nos. 10, 15, 18, 19, 25-29, 31-32, 36-37, 39-40, 43-46, 53-60, 63-68, 70, 73-85, 87, 90-98, 100-01, 106-07, 110-113, 119-23, 126-28, 130-37.

[2]  Dkt. Nos. 39, 65, 84, 97, *re:* text order dated Oct. 19, 2012, 119; 126; 136.

[3]  *See, e.g.,* Dkt. No. 36 at 8 ("Now I've tried to explain all of this before[,] yet, I still don't have any other names . . . . What seems to be the problem or are you just stupid[?]"); Dkt. No. 46 at 1 ("You wouldn't send a 10 year old girl back to her step father[']s house to be molested again would you??? . . . The next time I see one of th[o]se two men[,] we are going to fight to the death, unless it[']s at the federal court."); Dkt. No. 53 at 3 ("I thought abortion was le[gal], at least the same Supre[me] Court that upheld Eugenics in the 1960's said it was, they told everyone that forced sterilization of 'fucking retards and or anyone else is OK' along with a wom[a]n's right to kill unborn children. [L]ook at Planned Parenthood telling unmarried women how difficult it is to feed a child or buy [d]iapers to demoralize them into killing children, when [b]reast milk is free and you can wash 20 pieces of cloth from a used sheet over and over again!"); Dkt. No. 63 at 8 ("The defendants claim hardship . . . Bo[o] ho[o] cry to your mother not the court."); Dkt. No. 67 at 2 ("I do not do opium products[;] I think they are in[s]idious, so I smoke marijuana for relief instead for my uniquely painful disability . . . . I chose for myself like a wom[a]n and her abortion (baby killing) when it comes to my health care."); Dkt. No. 68 at 1 (requesting that a new patent law be blocked and warning the court to "handle [the enclosed information] with care, you can get arrested if the Iranians find out"); Dkt. No. 90 at 5-6 (notifying the court that he awakes each night dreaming of "a shot out on a bus load of dead children," and that when he is awake, plaintiff "constantly think[s] of ways to cut the thr[oa]ts of the tax payer[']s children."); Dkt. No. 91 at 3 ("I would like to file a motion to [e]at the grand children of the Democratts [sic] + Republicans and [t]he Judges [t]hey've appointed who have let such an injustic[e] continue so long."); Dkt. No. 93 at 2 ("[E]ven my feelings are being used to harass me and I've been charged with crimes I do not believe are crimes because I express my feelings and some people don't like it[.] To[o] fucking [b]ad.");

counsel.[4]  Upon receipt of these filings, the court has explicitly warned plaintiff that vexatious and abusive court filings will not be tolerated, and has referred all letters that are objectively threatening, or may be construed to contain threatening language, to the United States Marshals Service for review.  *See*, *e.g.*, Dkt. No. 88 at 38 n.9; Text Order Dated Jan. 30, 2013; Text Order Dated Feb. 20, 2013.

On April 5, 2013, following notice from defendants' counsel that plaintiff had begun contacting and threatening defendants' counsel directly, the court issued a formal order warning plaintiff, one final time, that threats of the kind that he has repeatedly aired in this action will not be tolerated, and that any further filings of this nature would result in an order to show cause why I should not issue a recommendation to Judge Hurd that this matter be dismissed.  Dkt. No. 109.  Plaintiff subsequently filed an additional nine motions or letters with the court, Dkt. Nos. 110-13, 119-23, and sent one additional letter directly to defendants' counsel, Dkt. No. 117-1.  Of those ten filings, six contained

---

Dkt. No. 96 at 3 ("You are just about the sickest fucks ever and I also want to eat 100 of your children."); Dkt. No. 100 at 3 ("Judge [P]eebles is a terroristic freak"); Dkt. No. 108-1 at 1-2 (threatening defendants' counsel that he will visit her house in the middle of the night to discuss this case and "what [they] are eating at the cookout," and attaching what appears to be formulated as a recipe for "little kid a la king" at the end of the letter).

[4]     Dkt. Nos. 108, 117.

4

harassing and/or threatening language.[5]

As a result of plaintiff's persistent conduct, the court issued the promised order to show cause to plaintiff on April 16, 2013. Dkt. No. 124. On April 29, 2013, plaintiff filed his response to that order and included over 200 pages of supporting documents. Dkt. No. 128. In his response, plaintiff offered no explanation for his past conduct, except to suggest that his language and behavior should be construed as sarcasm. *Id.* at ¶ 1.

II. DISCUSSION

"A court has the inherent power to supervise and control its own proceedings and to fashion an appropriate sanction–including outright dismissal of a lawsuit–for bad-faith conduct." *Phelan v. Karandy*, No. 11-CV-0636, 2012 WL 2235125, at *2 (N.D.N.Y. June 15, 2012) (Mordue, J.) (citing *Chambers v.*

---

[5] Dkt. No. 117-1 at 1-2 (stating, "I will be making citizens arrests, and I hope they resist . . . the federal court is a bunch of [g]ibberish old fools afraid to do the right thing[;] I[']m not," and also referring to defendants' counsel as "sick deranged freaks"); Dkt. No. 119 at 1 ("What the fuck is going ??? . . . What do I need to do so it[']s correct enough to get a sense of justice short of eating children??"); Dkt. No. 20 at 3 ("I just wrote a cook book on how to eat children tastefully out of despite and frustration[,] my intent being to demonstrate my [illegible], not actually eat children."); Dkt. No. 121 at 1 ("I would like permission to purchase [n]uclear [a]rms from North [K]orea"); Dkt. No. 122 at 3 ("Do I actually get to present my case to a jury?? . . . I hope it[']s soon, before I make a citizens arrest and get the death penalty in the process!"); Dkt. No. 123 at 2 ("Again[,] what the fuck do I have to do to get a sen[s]e of justice?").

5

*NASCO, Inc.*, 501 U.S. 32, 43-45 (1991)).[6]  Plaintiff's submissions described in this report have clearly been filed for no other purpose than to harass defendants and the court.  There is no reasonable explanation for any of plaintiff's behavior identified herein, and he has refused to alter his conduct even after being provided multiple opportunities to do so.  Although plaintiff includes an apology for being "so forward and rude and ma[king] anyone feel uncomfortable" in his response to the court's order to show cause, Dkt. No. 128 at ¶ 21, it is insufficient to justify his consistent and burdensome practice of filing threatening, vexatious, and frivolous submissions in this case.[7]

---

[6] Copies of unreported decisions cited in this case have been attached to this report and recommendation for the convenience of the *pro se* plaintiff.

[7] Notwithstanding the harassing and threatening language contained in plaintiff's filings, as illustrated above, they are largely without merit, and often are duplicative of one another.  For example, plaintiff has requested the court appoint *pro bono* counsel five times, each time failing to demonstrate any changed circumstances that would justify the court exercising its discretion to grant that relief.  Dkt. Nos. 10, 32, 55, 66, 93.  By way of another example, despite having been issued a copy of the "Photocopy Request Form - US District Court - NDNY" on two occasions, and having been notified that he must pay for copies on two separate occasions, plaintiff has persisted in filing seven requests with the court for copies of items on the docket without following the proper procedure.  Dkt. Nos. 15, 18, 54, 58, 67, 92, 94.
 Even after the court issued its order to show cause, plaintiff continued to make submissions that are entirely unrelated to the lone ADA claim that remains in this case.  *See* Dkt. No. 127 (complaining that he was "sat on by a fat overweight health care employee who probably . . . believes its not your healthcare unless it[']s an abortion you were [psycho therapied] into participating in"); Dkt. No. 130 (attaching nineteen pages of documents that, by plaintiff's own description, do not relate to plaintiff's ADA claim, but instead relate to "the [b]ogus ficti[ti]ous fabricated l[i]es the state + county [a]ctors are working together to intimidate their victims" and "a request for a restraining order [he] sent Judge Hummel"); Dkt. No. 131 (complaining that he has not received a response from the New York State Department of Corrections and Community Supervision); Dkt. No. 132 (a photocopy of his

The court would only add that, before deciding to issue its recommendation that this case be dismissed, it has considered the five factors the Second Circuit has instructed courts to consider when contemplating the issuance of an anti-filing injunction. Although the court is not, at this time, referring the matter to Chief District Judge Gary L. Sharpe for consideration of that more severe sanction, out of an abundance of caution, I have considered the five factors informing such a decision, which include the following:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986).

In evaluating the first factor, which focuses on plaintiff's litigation history,

---

handicap parking permit with no explanation as to how it might relate to an ADA claim); Dkt. No. 135 (requesting emergency judicial intervention for, *inter alia*, alleged assaults by state and non-state actors, "reckless endangerment of a vulnerable adult," and "state sa[nc]tioned to[rtu]rous [h]uman [r]ights violations"); Dkt. No. 137 (including a copy of his county court lawsuit and requesting the court forward it to defendants).
    It appears abundantly clear to the court that plaintiff's voluminous filings, which are duplicative of one another, threatening, or without legal basis, are only intended to harass defendants and the court.

7

the court need not look any further than the other action pending in this district before Judge Hurd to determine that plaintiff's pattern of filing frivolous submissions has been continued in that case, as well.  *See*, *e.g.*, *Levesque v. CVPH Med. Ctr.*, No. 12-CV-0960, Decision and Order (Dkt. No. 14) at 9-10 (N.D.N.Y. Oct. 9, 2012) (Hurd, J.) (finding that "it is far from clear that there is any relationship between the relief sought in plaintiff's motions [for injunctive relief] and the conduct giving rise to the complaint").  In addition, a review of the docket sheet in that case reveals that, of the forty docket entries accumulated in that case since its inception in June 2012, thirty-four are plaintiff's submissions.  *See generally Levesque*, No. 12-CV-0960, Docket Sheet.  Currently, as of the date of issuing this report, plaintiff has eight motions pending in that action.  *Id.*  Although these statistics are not dispositive, they are illustrative of plaintiff's pattern of filing voluminous submissions.

      The second factor requires an inquiry into whether the plaintiff has a good-faith belief that he will prevail.  In this case, the court cannot contemplate how plaintiff could perceive that the only surviving cause of action in this case, a discrimination claim pursuant to the ADA, has merit when the majority of plaintiff's submissions have failed to even mention his alleged disability.  Moreover, many of plaintiff's submissions, as already described in this report,

are entirely unrelated to this action.

The third factor focuses on whether plaintiff is represented by counsel. In this instance, plaintiff, who is not represented by counsel, has demonstrated at least an ability to navigate the court's procedural rules and requirements by filing his submissions, responding to defendants' submissions, and updating the court with his address.

Turning to the fourth factor, which addresses the burden and expense of plaintiff's conduct, I note that plaintiff has sent implicit threats directly to defendants' counsel, and there can be no doubt as to the imposition plaintiff's voluminous filings has caused personnel in the clerk's office.

Finally, the fifth factor requires the court to answer whether other, less severe sanctions would be adequate. I have previously demonstrated my consideration of them with the issuance of a bar order that required plaintiff to seek permission from the court before filing any further submissions. Text Order Dated Feb. 20, 2013. That order, like the other warnings issued by the court, has been summarily ignored by plaintiff. Moreover, in light of plaintiff's numerous complaints that he does not have any money to pay for copies of portions of this action's docket, I find that monetary sanctions are insufficient to address plaintiff's conduct.

III. SUMMARY AND RECOMMENDATION

For the reasons stated herein, and as a measure of last resort, it is hereby respectfully

RECOMMENDED that, in the event this case is dismissed, plaintiff's complaint be dismissed in its entirety; and it is further

RECOMMENDED that plaintiff's outstanding motions (Dkt. Nos. 122, 123, 135) be denied as moot; and it is further

ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72 Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993).

Dated:     May 24, 2013
           Syracuse, New York

_David E. Peebles_
David E. Peebles
U.S. Magistrate Judge

**2012 WL 2235125**
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kenneth J. PHELAN, Plaintiff,
v.
Dr. KARANDY, Physician, Great Meadow Corr. Facility; Nurse Ted; Lepka, Nurse, Defendants.

No. 9:11–CV–636 (NAM/RFT). | June 15, 2012.

**Attorneys and Law Firms**

Kenneth J. Phelan, Romulus, NY, pro se.

**Opinion**

### MEMORANDUM–DECISION AND ORDER

Hon. NORMAN A. MORDUE, District Judge.

### INTRODUCTION

**\*1** On December 5, 2011, United States Magistrate Judge Randolph F. Treece *sua sponte* issued an Order to Show Cause (Dkt. No. 8) directing plaintiff to show cause why Magistrate Judge Treece should not recommend that this Court dismiss the action and issue an injunction against filing further *pro se* actions without leave of the Chief Judge. After receiving responses from plaintiff (Dkt.Nos.9, 10), Magistrate Judge Treece issued a Report and Recommendation and Order (Dkt. No. 11) recommending that the complaint be dismissed and that plaintiff be permanently enjoined from filing any other case in this District without leave of the Chief Judge, unless he is represented by counsel. Plaintiff objects (Dkt. No. 12). By text order dated March 13, 2012, Magistrate Judge Treece denied as moot plaintiff's pending motion (Dkt. No. 2) for leave to proceed *in forma pauperis.*

This Court refers to Chief Judge Gary L. Sharpe the recommendation of an anti-filing injunction. The Court accepts so much of the Report and Recommendation as recommends dismissal of the complaint, and dismisses the complaint with prejudice for the reason set forth in this Memorandum–Decision and Order.

### DISCUSSION

On June 8, 2011, plaintiff filed the complaint herein (Dkt. No. 1), alleging that on seven or eight occasions between March 23, 2011 and May 18, 2011, while he was incarcerated at Great Meadows Correctional Facility, he suffered severe migraines, and that on each occasion, defendants refused to provide him with any treatment. The complaint has not yet been served.

On December 5, 2011, Magistrate Judge Treece issued the Order to Show Cause (Dkt. No. 8) directing plaintiff to show cause why Magistrate Judge Treece should not recommend that this Court dismiss the action and issue an injunction against filing further *pro se* actions without leave of the Chief Judge. The Order to Show Cause reviewed plaintiff's litigation history in detail, noting *inter alia* that he has filed at least twenty-eight civil actions in several different district courts, and that during the last two years he initiated nineteen civil actions in the Northern District of New York alone. Magistrate Judge Treece reviewed all pertinent factors, including those set forth in *Safir v. United States Lines, Inc.* 792 F.2d 19, 24 (2d Cir.1986). He found that plaintiff "has a history of vexatious and duplicative litigation"; that many of his cases have been dismissed due to his failure to prosecute; that plaintiff did not have a "good faith expectation of prevailing in many of his civil actions as they patently lack any legal basis"; that although plaintiff proceeds *pro se,* the number of federal actions he has filed demonstrates "his extensive litigation experience"; that he has caused "needless harassment and extreme burden on the many defendants he sues, as well as the Court"; and that in light of his protracted litigation history, there does not appear to be "any other sanction, short of an injunction, [that would] be adequate to protect the Court and defendants from Plaintiff's insatiable appetite for continued litigation."

**\*2** On December 28, 2011, plaintiff filed his "Answer to Order to Show Cause" (Dkt. No. 9). In addition to disputing many of Magistrate Judge Treece's findings, plaintiff avers that he has not abused the judicial process, and states: "Mr. Phelan is shocked at the vicious lies Treece has thrown at me and slandered my good name.... Why do you openly lie about my cases? You will never get any respect doing this and you dishonor not only the bench, but our flag and our government!" Plaintiff continues in this vein for a few pages, making numerous comments such as: "[D]amn you liar!";

"Dumbass!"; and "You judges are really stupid!" Plaintiff then states:

> I have not cause[d] any harassment or burden on any of the defendants or the court. Treece its clear you have no clue what harassment is. Upon my release, in fact, in light of all these evil lies you spit at me I'm going to have to put you on my calender and see you at your home. We need to talk in person.

(Emphasis in original.) Plaintiff continued:

> Treece, you owe me a *FAT* apology! You need to start reading case law as I have instead of wasting time slandering peoples' good name....

(Emphasis in original.)

On January 30, 2012, plaintiff wrote a letter to Magistrate Judge Treece (Dkt. No. 10) stating:

> Since you want to treat me like an attorney, I will be billing you like one. Enclosed is my bill for the unnecessary Order to Show Cause. I will be collecting this sooner or later.

Plaintiff attached a "legal bill" for $4,400.

Thereafter, Magistrate Judge Treece issued the Report and Recommendation and Order (Dkt. No. 11) recommending that the complaint be dismissed and that plaintiff be permanently enjoined from filing any other case in this district without leave of the Chief Judge, unless he is represented by counsel. Plaintiff objects (Dkt. No. 12). In his objection (Dkt. No. 12), plaintiff opines that Magistrate Judge Treece "is biased and should be removed from the bench."

It is for the Chief Judge of the Northern District of New York to decide whether to issue an anti-filing injunction. Thus, so much of Magistrate Judge Treece's Report and Recommendation as recommends the issuance of an anti-filing injunction is referred to Chief Judge Gary L. Sharpe.

Magistrate Judge Treece did not address whether the complaint herein is frivolous or fails to state a claim. Rather, his recommendation that the complaint be dismissed appears to be based on his recommendation that an anti-filing injunction be entered. In other words, he recommends that the complaint be dismissed without prejudice and an anti-filing injunction entered, thus requiring plaintiff to apply to the Chief Judge for leave to re-file the claims asserted in this action. Because it is referring the anti-filing injunction question to Chief Judge Sharpe, this Court has no basis to dismiss the complaint on this ground.

The Court *sua sponte* considers in the alternative whether to exercise its discretion to dismiss the complaint as a sanction for the abusive and threatening language in plaintiff's submissions in response to the Order to Show Cause. A court has the inherent power to supervise and control its own proceedings and to fashion an appropriate sanction —including outright dismissal of a lawsuit—for bad-faith conduct. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 43–45 (1991). A sanction is appropriate where the challenged conduct is "entirely without color" and motivated by "improper purposes" such as harassment or delay. *Milltex Indus. Corp. v. Jacquard Lace Co.,* 55 F.3d 34, 38 (2d Cir.1995).

**\*3** Plaintiff's invective, personal attacks, and threats against Magistrate Judge Treece, as set forth above, are entirely without color. There can be no proper purpose for plaintiff's threats and abusive statements, and no motive except harassment. The Court finds that plaintiff's threats and abusive statements were made in bad faith.

Plaintiff cannot reasonably claim to have had a good-faith basis for his threats and abusive statements. Nor can he reasonably argue that he believed they were proper. Under the circumstances here, no purpose would be served by giving plaintiff notice and an opportunity to be heard prior to the imposition of a sanction. In view of the nature of plaintiff's conduct, the Court finds that dismissal of the complaint with prejudice is the appropriate sanction.

It is therefore

ORDERED that United States Magistrate Judge Randolph F. Treece's Report and Recommendation (Dkt. No. 11) is referred in part and accepted in part as set forth herein; and it is further

ORDERED that the Court refers to Chief Judge Gary L. Sharpe the recommendation by Magistrate Judge Treece that plaintiff be permanently enjoined from filing any other case

in this district without leave of the Chief Judge, unless he is represented by counsel; and it is further

ORDERED that the Court accepts so much of the Report and Recommendation as recommends dismissal of the complaint; and it is further

ORDERED that the complaint is dismissed with prejudice, for the reason set forth in this Memorandum–Decision and Order; and it is further

ORDERED that the Clerk of the Court is directed to serve copies of this Memorandum–Decision and Order in accordance with the Local Rules of the Northern District of New York.

IT IS SO ORDERED.

**End of Document**

© 2013 Thomson Reuters. No claim to original U.S. Government Works.